IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARTH A.,[1]

                Plaintiff,

       v.

ANDREW M. SAUL, Commissioner of
Social Security,

             Defendant.

Case No. 6:19-cv-01592-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

      Garth A. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court reverses the Commissioner's decision and remands for an award of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.      PLAINTIFF'S APPLICATIONS**

Plaintiff was born in November 1965, making him forty-nine years old on November 2, 2015, the alleged disability onset date. (Tr. 36, 183.) Plaintiff received a GED and completed a Certified Nursing Assistant ("CNA") training program in 1990. (Tr. 232.) Plaintiff has past work experience as a CNA, cashier, and dog food grinder. (Tr. 233.) In his applications, Plaintiff alleges disability due to chronic obstructive pulmonary disease ("COPD"), asthma, emphysema,

congestive heart failure, edema, high blood pressure, bilateral hearing loss, respiratory issues, chronic neck pain, numbness in his extremities, depression, and PTSD. (Tr. 231.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on February 22, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 123.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on July 25, 2018. (Tr. 32-55.) On October 24, 2018, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 15-24.) On August 15, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 2-8.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 2, 2015, the alleged disability onset date. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: COPD; congestive heart failure; coronary artery disease; cervical spine degenerative disease; and obstructive sleep apnea (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to the following limitations: (1) Plaintiff can "reach overhead bilaterally occasionally"; (2) Plaintiff can "never climb ladders, ropes, or scaffolds"; and (3) Plaintiff "must avoid dust, odors, fumes, and pulmonary irritants." (*Id.*) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work. (Tr. 22.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as: (1) a small products assembler I and II, and (2) a counter clerk. (Tr. 23.)

///

///

**DISCUSSION**

Plaintiff argues on appeal that the ALJ erred by failing to provide: (1) specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; and (2) specific and legitimate reasons for discounting the opinion of Plaintiff's treating physicians, Dr. Thomas Pitchford ("Dr. Pitchford") and Dr. Wojcieck Nowak ("Dr. Nowak"). As explained below, the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court concludes that Plaintiff satisfies the credit-as-true standard, and therefore remands for an award of benefits.

## I.   PLAINTIFF'S SYMPTOM TESTIMONY

### A.   Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity

and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

B.    **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to do so here.

The ALJ discounted Plaintiff's testimony on the ground that it conflicted with the objective medical evidence. (*See* Tr. 20, finding that Plaintiff's symptoms are "not entirely consistent with the medical evidence"). The Ninth Circuit has held that it is appropriate to discount a claimant's testimony based on inconsistencies with, among other things, "the objective medical evidence[.]" *Eblen v. Saul*, 811 F. App'x 417, 420 (9th Cir. 2020) (citing *Tommasetti*, 533 F.3d at 1039).

However, an ALJ may not reject a claimant's pain testimony merely because the testimony appears disproportionate to the objective medical evidence. *See Burch*, 400 F.3d at 680 ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). Here, the only reason the ALJ cited to discount Plaintiff's testimony is its inconsistency with the medical evidence. (Tr. 20-21; *see also* Def.'s Br. at 2-3, acknowledging that the ALJ discounted Plaintiff's subjective symptom testimony due to alleged inconsistencies with the medical evidence in the record). Even

if the objective medical evidence is inconsistent with Plaintiff's proffered symptoms, the ALJ may not rely on a lack of objective medical evidence as the sole reason to discredit his testimony. *See Taylor v. Berryhill*, 720 F. App'x 907, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted). Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony. *Cf. Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

## II.     MEDICAL OPINION EVIDENCE

### A.     Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d

715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more

than state conclusions. He must set forth his own interpretations and explain why they, rather

than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he

rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,

asserting without explanation that another medical opinion is more persuasive, or criticizing it

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13

(citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

### B.    Analysis

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for

discounting the opinions of his treating physicians, Drs. Pitchford and Nowak. (Pl.'s Opening Br.

at 15, 17-19.) The Court agrees.

### 1.    Dr. Thomas Pitchford, M.D.

The record indicates that Dr. Pitchford served as Plaintiff's treating physician for at least

seven years and saw him on a monthly basis. (Tr. 288, 943.) On January 22, 2018, Dr. Pitchford

completed a medical evaluation. (Tr. 943-47.) Dr. Pitchford stated that Plaintiff has been

diagnosed with neck pain and radiculopathy; Plaintiff experiences pain and numbness in his

neck; Plaintiff can walk ten blocks without rest or severe pain; Plaintiff can sit and stand for

sixty minutes at one time and eight hours total in an eight-hour workday; Plaintiff can

occasionally lift ten pounds or less, but never more; Plaintiff is limited to right-sided handling

twenty percent of the workday, right-sided fingering fifty percent of the workday, and right-sided

reaching for ten percent of the workday; and Plaintiff requires breaks after using his hands to

perform handling and fingering. (Tr. 943-46.) Dr. Pitchford declined to opine as to the number of

workdays Plaintiff would miss each month due to his impairments, and was unable to assess

whether Plaintiff needs to lie down or rest periodically during the day or whether Plaintiff requires opportunities to shift positions at will. (Tr. 944-45, 947.)

The ALJ assigned "little weight" to Dr. Pitchford's opinion, for two reasons: (1) "Dr. Pitchford's own treatment notes do not offer supporting objective evidence"; and (2) Dr. Pitchford "provided no medical explanation or basis to support needing unscheduled breaks or the other noted limits." (Tr. 21.)

Dr. Pitchford's medical opinion conflicts in part with the opinion of the state agency non-examining doctor, Dr. Martin Kehrli ("Dr. Kehrli"), who found that Plaintiff can occasionally lift and carry twenty pounds, can frequently lift and carry ten pounds, and that Plaintiff is not limited in handling, fingering, or feeling. (Tr. 85-89, 97-98.) Due to the conflicting medical opinions, the ALJ was required to provide specific and legitimate reasons for discrediting Dr. Pitchford's opinion. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("[I]f the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record.") (quotation marks citation omitted); *Kilian v. Barhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Kilian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons."); *see also* Pl.'s Opening Br. at 14 (acknowledging that the "specific and legitimate reasons" standard applies in this case).

The ALJ discounted Dr. Pitchford's medical opinion because he found that his treatment notes did not offer objective medical evidence in support of his opinion. (Tr. 21.) The ALJ's conclusion is not supported by substantial evidence in the record. Dr. Pitchford treated Plaintiff

for chronic neck pain and radiculopathy, and he specifically indicated that his medical opinion pertained to that diagnosis. (Tr. 943.) Consistent with his opinion, Dr. Pitchford's treatment notes document daily neck pain, stiffness, muscle spasms, tenderness, and decreased range of motion, as well as upper extremity paresthesias and radiating pain to his left shoulder, left arm, and left hand. (Tr. 723, 726, 729, 734, 738, 755, 762, 766, 770, 773, 776, 778, 783, 786, 789, 791, 795, 802.) In addition, Dr. Pitchford's treatment notes reflect consistent clinical findings of limited cervical range of motion and cervical tenderness. (Tr. 724, 727, 730, 736, 740, 757, 764, 768, 772, 775, 778, 783, 785, 788, 791, 797, 804.) Indeed, not a single treatment note made by Dr. Pitchford between the alleged disability onset date and Plaintiff's hearing indicates a normal range of cervical motion.

As Dr. Pitchford noted, Plaintiff underwent a left posterior C8 foraminotomy in 2015 to treat his chronic neck and arm pain (Tr. 514-16), but his condition remained unchanged and he was not responding to treatment. (Tr. 723-24, 729-31, 734, 738, 755, 766, 778, 783, 788-89, 791, 801; *see also* Tr. 520, one month after Plaintiff's surgery, his surgeon noted "numbness in all 5 fingers of his left hand. . . . significant tenderness, and a positive Tinel sign over his left ulnar nerve with some replication of the pain up into his shoulder blade"). A cervical MRI performed in 2016 also corroborates Plaintiff's persistent symptoms as documented by Dr. Pitchford, showing multilevel disc osteophyte complex formation, multilevel moderate spinal canal narrowing, and moderate to severe neuroforaminal narrowing asymmetric to the right, primarily at cervical vertebrae C3-4 and C4-5. (Tr. 716.)

As the foregoing evidence demonstrates, Dr. Pitchford's treatment notes offer objective medical evidence in support of his opinion regarding Plaintiff's limitations. Accordingly, this was not a specific and legitimate reason for discounting Dr. Pitchford's medical opinion.

The ALJ also discounted Dr. Pitchford's opinion because he did not provide an explanation for the limitations he assessed in his medical evaluation. (Tr. 21.) "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford*, 950 F.3d at 1155. "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, 'the ALJ may permissibly reject check-off reports that do not contain any explanation for the bases of their conclusions.'" *Id.* (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017), and quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). However, "even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record—especially the physician's treatment notes." *Emily M K. v. Comm'r Soc. Sec.*, No. C19-5384 TLF, 2020 WL 5869067, at *3 (W.D. Wash. Oct. 2, 2020) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014)).

The Court agrees that Dr. Pitchford does not explain the basis for his opined limitations. When asked to identify the "relevant clinical findings, test results, etc." that support his opinion, Dr. Pitchford wrote only "painful neck." (Tr. 944.) Accordingly, this was a specific and legitimate reason to discount Dr. Pitchford's opinion. *See Lora J. Green v. Saul*, No. 19-16092, 2020 WL 7240448, at *1 (9th Cir. Dec. 9, 2020) (affirming the ALJ's decision to assign "little weight" to the claimant's treating physician's opinion where the physician's check-box report "lacked explanation and support"); *Williams v. Comm'r Soc. Sec. Admin.*, No. CV-20-00136-PHX-JAT, 2020 WL 7123010, at *4 (D. Ariz. Dec. 4, 2020) (finding that the "check-off report identified the general documents on which the opinions were based but did not provide an *explanation* of their conclusions" and that "this is a specific, legitimate reason to support giving [the claimant's treating physician's opinion] 'little weight'"); *Erik F.N. v. Comm'r, Soc. Sec.*

*Admin.*, No. 1:19-CV-00778-HZ, 2020 WL 4207080, at *6 (D. Or. July 22, 2020) (holding that

the ALJ did not err in giving limited weight to the claimant's treating physician's opinion where

"he provided no support or explanation for the limitations he assessed in the check-box portion

of the report").

However, "the ALJ is not allowed to disregard a treating physician's opinion solely

because the opinion is brief and conclusory, the ALJ is required to consider a treating doctor's

opinion within the context of the record." *Emily M K.*, 2020 WL 5869067, at *4 (citing *Burrell*,

775 F.3d at 1140). As explained above, the ALJ failed properly to consider Dr. Pitchford's

treatment notes, which provide clinical findings and objective medical evidence of Plaintiff's

symptoms and proffered limitations. Furthermore, the longitudinal record further corroborates

Dr. Pitchford's opinion. (*See* Tr. 586, a January 2015 treatment note diagnosing Plaintiff with

right shoulder rotator cuff syndrome with a rotator cuff tear and moderately severe

acromioclavicular arthritis; Tr. 517, Plaintiff reporting to his surgeon one month after surgery

that his neck pain "radiates down his arm into his posterior arm and into his forearm extending

into all 5 fingers" and that "his numbness extends into all fingers of his hand rather than just the

fourth and fifth digits"; Tr. 706, a pain management specialist assessed Plaintiff for chronic neck

pain, cervical radiculopathy, and cervical facet syndrome, and noted tenderness in the lower

cervical spine and increased pain with range of motion exercises.) The ALJ did not address the

full context of the medical record, including Dr. Pitchford's treatment notes containing

supportive clinical findings and objective evidence of Plaintiff's limitations. Accordingly, the

ALJ erred in rejecting Dr. Pitchford's opinion. *See Burrell*, 775 F.3d at 1140 ("Indeed, Dr.

Riley's assessments are of the 'check-box' form and contain almost no detail or explanation. But

the record *supports* Dr. Riley's opinions because they are consistent both with Claimant's

testimony at the hearing and with Dr. Riley's own extensive treatment notes which, as discussed

above, the ALJ largely overlooked. The ALJ clearly erred in his assessment of the medical

evidence, overlooking nearly a dozen reports related to head, neck, and back pain.").

### 2.    Dr. Wojciek Nowak, D.O.

Plaintiff also argues that the ALJ improperly rejected Dr. Nowak's medical opinion. Dr.

Nowak began treating Plaintiff for his heart and lung conditions in October 2017. (Tr. 1205-06,

1219.) On June 13, 2018, Dr. Nowak completed a treating source statement, diagnosing Plaintiff

with paroxysmal atrial fibrillation, occlusive coronary artery disease with ongoing angina,

biventricular failure, sleep apnea, and tobacco abuse. (Tr. 1219-23.) Dr. Nowak noted that

Plaintiff's atrial fibrillation and coronary artery disease were chronic conditions. (*Id.*) He opined

that Plaintiff would need to lie down or rest periodically when he experienced angina, typically

two or three times per week; Plaintiff could sit for sixty minutes at a time and his ability to stand

or walk depended on pace; Plaintiff would need "to avoid walking at a fast pace" and carrying

heavy objects; Plaintiff can lift and carry less than ten pounds frequently and up to twenty

pounds occasionally; Plaintiff would require an unscheduled ten-to-fifteen minute break during

an eight-hour workday; Plaintiff would need to periodically elevate his legs in a physical eight-

hour period; and Plaintiff's conditions would cause him to miss three to four workdays a month.

(Tr. 1220-23.)

The ALJ gave Dr. Nowak's opinion regarding Plaintiff's exertional limitations "great

weight" because it was "consistent with Dr. Kehrli's overall persuasive medical opinion." (Tr.

22.) However, the ALJ accorded "little weight" to the remainder of Dr. Nowak's medical

opinion, finding that "Dr. Nowak's treatment notes do not support the level of severity opined

outside of exertion." (*Id.*) Specifically, the ALJ noted that: (1) Plaintiff "presented with regular

cardiac rate and rhythm"; (2) Plaintiff had "no indication of diminished strength or gait deficit";

PAGE 13 – OPINION AND ORDER

(3) Plaintiff's follow-up cardiac appointments "did not show signs of significant worsening" and instead noted only "trivial" bilateral pitting edema and palpable bilateral radial pulses; and (4) Plaintiff's chest pain "continued to be resolved with nitroglycerin." (*Id.*)

Like Dr. Pitchford, Dr. Nowak's medical opinion conflicts in part with the opinion of the state agency non-examining doctor, Dr. Kehrli. (*See* Tr. 85-89, 97-98.) Therefore, the ALJ was required to provide specific and legitimate reasons for discrediting Dr. Nowak's medical opinion. The ALJ failed to do so here.

The ALJ offered only one reason for rejecting Dr. Nowak's opinion: that Dr. Nowak's treatment notes were inconsistent with the degree of limitation identified in his medical source statement. (Tr. 22.) An ALJ may reject a medical opinion that is unsupported by the treating physician's clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy between a treating physician's opinion as to the claimant's capabilities and his observations and treatment notes is a "clear and convincing reason for not relying on the doctor's opinion"). Here, however, substantial evidence in the record does not support the ALJ's conclusion regarding Dr. Nowak's opinion. As explained below, the ALJ highlighted the record evidence that supports his decision to discount Dr. Nowak's opinion, while ignoring observations in the treatment notes that support Dr. Nowak's opinions included in the medical source statement. *See Melissa B. v. Saul*, No.1:19-cv-00363-SB, 2020 WL 5517260, at *3 (D. Or. Sept. 14, 2020) (holding that the ALJ erred by cherry-picking record evidence that supported his decision to discount the treating physician's opinion and "overlooked significant, probative evidence that contradicted his findings").

For example, the ALJ noted that Plaintiff had a normal cardiac rate and rhythm and demonstrated full strength and normal gait. (Tr. 22, citing Tr. 1209-10.) However, at a more

recent visit, Dr. Nowak noted an abnormal cardiac rhythm, which included right-sided S4

gallops. (Tr. 1205.) Dr. Nowak also noted an abnormal EKG with an incomplete sinus rhythm

and left bundle branch block. (*Id.*) Contrary to the ALJ's findings, Dr. Nowak indicated that

Plaintiff's chest pains had increased in frequency and duration since his myocardial perfusion

imaging conducted the previous year, and that Plaintiff "is becoming more and more

symptomatic," as evidenced by "episodes of atrial fibrillation which render him short of breath."

(*Id.*) In addition, Dr. Nowak recommended that Plaintiff undergo a left heart catheterization,

which revealed the presence of a chronic total occlusion of the right coronary artery with

heterocollaterals from the left coronary tree. (Tr. 1211; *see also* Tr. 1212, noting that Plaintiff

"has had multiple episodes of chest pain since cardiac catherization was completed" and that he

experiences "frequent, almost daily episodes of chest pressure and heaviness occurring without

and with activity" and "increased frequency of palpitations with dizziness").

The ALJ also points to a treatment note indicating that Plaintiff's angina has been

"resolved" by taking medication. (Tr. 22.) It is well settled that references to signs of

improvement must be read in context of the overall diagnostic picture drawn by the treatment

provider. *See Ghanim*, 763 F.3d at 1161 (holding that an ALJ must read the claimant's treatment

records "in context of the overall diagnostic picture," including where the records "consistently

reveal that, despite some occasional signs of improvement" the claimant continued to experience

symptoms); *Gagnon v. Colvin*, No. 6:16-cv-00988-SB, 2016 WL 3450825, at *8-9 (D. Or. June

22, 2016) (explaining that signs of improvement must be read in the context of the overall

diagnostic picture the provider draws). It is true that Dr. Nowak's treatment notes indicate that

Plaintiff showed some signs of improvement. For example, in a June 2018 treatment note, Dr.

Nowak noted that Plaintiff's heart rate had been "controlled" with the use of beta blocker

therapy, and that the "frequency and severity of angina has improved by approximately 50%." (Tr. 1216.) However, in that same note, Dr. Nowak reported that Plaintiff had "significant abnormalities" on a recent pulmonary function test, and that Plaintiff "continues to have multiple episodes of angina [per week]," which is "lifestyle limiting." (Tr. 1216.)

The record evidence demonstrates that the ALJ failed to evaluate Dr. Nowak's opinion in context of the overall diagnostic picture he drew. Instead, the ALJ appeared to selectively consider the evidence that supports his decision and overlook the evidence that contradicted his findings. *See Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (noting that ALJs cannot "cherry-pick" from the record to support their findings and "ignore evidence that contradicts [their] findings"); *Fanlo v. Berryhill*, No. 17-cv-1617-LAB (BLM), 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) ("The ALJ cherry-picked Plaintiff's progress notes . . . to support her conclusion that Plaintiff was stable and improving, but the ALJ failed to acknowledge progress notes from the same time period that directly contradicted her conclusion.") Accordingly, the ALJ erred in rejecting Dr. Nowak's opinion as unsupported by his treatment notes.

### 3.    Conclusion

For the reasons stated, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting Drs. Nowak and Pitchford's medical opinions.

## III.    REMEDY

### A.    Applicable law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a

number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

## B.   Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is warranted.

First, the Court finds that the record has been fully developed. It includes over nine years of treatment notes, testimony from Plaintiff about his symptoms and limitations, and opinions from two treating doctors, Drs. Pitchford and Nowak, and a non-examining state physician. The ALJ asked the VE hypothetical questions that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 52-53, the ALJ asked the VE about the customary tolerances for absences and routine rest break periods in the workplace, to which the VE responded that employers will not tolerate missing more than one day per month of work, and that anyone exceeding this customary limit would be unable to sustain competitive employment; *see also* Tr. 1223, Dr. Nowak reported that Plaintiff's medical conditions would prevent him from

maintaining a regular work schedule of an eight-hour day, five days a week with normal breaks of ten to fifteen minutes in the morning and afternoon, three to four days per month; Tr. 946, Dr. Pitchford reported that Plaintiff will need to take two unscheduled breaks during an eight-hour workday).

The Commissioner argues that the Court cannot direct a finding of disability where there are "outstanding issues on which further proceedings in the administrative court are useful," but the Commissioner identifies no such issues. (Def.'s Br. at 4-5.) Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa* v. *Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, the Court concludes that Plaintiff satisfies the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and Drs. Pitchford and Nowak's medical opinions. Therefore, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because his impairments would cause him to exceed the customary tolerance for absences. (*See* Tr. 52-53, the VE testified that employers will not

tolerate missing more than one day per month of work or exceeding customary break periods of ten minutes in the morning and afternoon and a lunch break; *see also* Tr. 1223, Dr. Nowak reported that Plaintiff's medical conditions would prevent him from maintaining a regular work schedule of an eight-hour day, five days a week with normal breaks of ten to fifteen minutes in the morning and afternoon, three to four days per month; Tr. 946, Dr. Pitchford reported that Plaintiff will need to take two unscheduled breaks during an eight-hour workday.).

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *Cf. Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Weirick v. Saul*, 825 F. App'x 446, 450 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "the vocational expert's testimony establishes that if the improperly discredited opinions of the treating physicians were credited as true, there would be no jobs in the national economy that she could perform and 'the ALJ would be required to find the claimant disabled on remand'" (citing *Garrison*, 759 F.3d at 1020)); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony of [the treating psychologist], the lay witnesses, and [the claimant], would be unable to perform competitive employment").

PAGE 19 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 16th day of December, 2020.

_Stacie F. Beckerman_

HON. STACIE F. BECKERMAN
United States Magistrate Judge